NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0141n.06

No. 09-3696

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

YONG LAI LIAN, )
          )
    Petitioner, )
          )       ON PETITION FOR REVIEW
v. )       FROM A DECISION OF THE
          )       BOARD OF IMMIGRATION
          )       APPEALS
ERIC H. HOLDER, JR., )
          )
    Respondent. )

Before: GRIFFIN and KETHLEDGE, Circuit Judges, BERTELSMAN, District Judge.[*]

BERTELSMAN, District Judge. Yong Lai Lian ("Lian") petitions this Court for review of

a final order of the Board of Immigration Appeals ("BIA") affirming the decision of an Immigration

Judge denying Lian's application for asylum, withholding of removal, and request for relief under

the Convention Against Torture. Because we are without jurisdiction to review the denial of Lian's

asylum application, we DISMISS that part of his petition, and because he cannot satisfy the stringent

criteria for withholding of removal, we AFFIRM the BIA's decision denying Lian's claim.

**I.**

Lian is a native and citizen of the People's Republic of China, hailing from Changle City in

the Fujian Province. Lian entered the United States on or about November 8, 2000, without valid

---

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern
District of Kentucky, sitting by designation.

entry documentation. On December 18, 2000, the Department of Homeland Security issued a Notice to Appear requiring Lian to appear in Immigration Court to show why he should not be removed from the United States.

On December 18, 2002, Lian appeared before an Immigration Judge ("IJ") and conceded removability. On March 5, 2003, Lian filed an application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").

Lian, represented by counsel, appeared in Immigration Court for a merits hearing in Cleveland, Ohio on December 18, 2006. Lian testified that in 1999, he fell in love with a girl from his village. Lian was 21 and his girlfriend was 17, while the legal age for marriage was 22 for men and 20 for women. Nonetheless, the two began living together with Lian's parents. In June 2000, Lian learned that his girlfriend was pregnant, and the two decided they wanted to marry. Village officials, however, told Lian's parents that the two could not legally marry due to their age.

Despite the officials' refusal, Lian's family made plans for Lian and his girlfriend to marry in a traditional village ceremony on August 10, 2000. Early on the morning of that day, however, village police arrived at Lian's house and informed his parents that they were there to enforce the family planning policy. Lian and his girlfriend escaped out the back of the house, pursued by the police. Lian testified that the police caught up to him and beat him with a wooden club and cut him with a steel blade such that he still has scars on his back. Lian testified that, during this struggle, he struck one of the policemen. Eventually Lian escaped and fled to the Yunan Province.

Lian's girlfriend did not escape. Approximately ten days later, Lian contacted his mother who informed him that his girlfriend was forced to have an abortion. Lian submitted documentation

2

to show that his girlfriend underwent an "artificially induced abortion operation" on August 10, 2000.

Lian also testified that the village officials continued to come to his parents' house looking for him and that they detained his father for seven days. The police told Lian's father that Lian must report to the government security department for interrogation, and Lian introduced a summons dated September 8, 2000, to that effect.

After escaping China, Lian hired a smuggler to take him to the United States, where he arrived on November 8, 2000. Lian's family soon put him in touch with a lawyer in New York to help him file an asylum application. Lian spoke to this person only over the phone.

Lian testified that, on November 13, 2001, he traveled to New York looking for the lawyer but discovered that his law firm had closed down. Lian then retained another lawyer, Grace Chan, around November 2001. Chan filed an asylum application on Lian's behalf in March 2003.

In 2005, Lian married a Chinese national in the United States. Later that year, the couple had a daughter. Lian testified that he believed that if he and his wife returned to China, they would not be allowed to have more children and would face sterilization.

Following this hearing, the IJ issued a written decision denying all relief sought by Lian. The IJ first noted that an application for asylum generally must be filed within one year after an alien's arrival in the United States, pursuant to 8 U.S.C. § 1158(a)(2)(B). He noted that this period may be extended due to "extraordinary circumstances" relating to the delay or due to a "change of circumstances which materially affects the applicant's eligibility for asylum."

The IJ found that, while the one-year delay in the filing of Lian's asylum application due to the inaction of his first attorney could constitute "extraordinary circumstances," the additional delay

3

of 17 months after Lian obtained new counsel was not reasonable. In addition, the IJ found that Lian's subsequent marriage in the United States and the birth of his child could not extend the asylum application filing period.

Finally, the IJ found that even had Lian's application been timely filed, the evidence did not support a grant of asylum. The IJ noted that the evidence was uncontradicted that Lian had never been married to his girlfriend and that various circuits have held that forced abortion inflicted on a woman to whom the applicant was not married cannot form the basis for an asylum application. The IJ further found Lian's testimony and evidence insufficient to show that he would likely be subjected, if returned to China, to forced sterilization, imprisonment, or any other penalty as a result of the unwed pregnancy of his girlfriend, and that his stated fear of being subjected to punishment for striking a Chinese government official during his escape provided an insufficient basis for asylum.

For the same reasons, the IJ found that Lian could not prevail under the higher burden for withholding of removal or relief under CAT.

Lian timely appealed the IJ's decision to the BIA, which affirmed the decision and dismissed Lian's appeal on August 5, 2008. The BIA agreed with the IJ that Lian was statutorily ineligible for asylum because his application was untimely. The Board further agreed with the IJ's determination that, even accepting Lian's testimony as credible, he had not shown a "clear probability" that he would suffer persecution or torture if returned to China so as to qualify for withholding of removal.

On May 29, 2009, the BIA reissued its decision to correct a defect in service, incorporating by reference its August 5, 2008 order. Lian filed a timely petition for review with this Court on June 15, 2009.

4

## II.

The BIA here reviewed the IJ's decision and issued an opinion by a single-member panel pursuant to 8 C.F.R. § 1003.1(e) (2010). "Where the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). This court also reviews the IJ's decision to the extent his reasoning is adopted by the BIA. *Id.* Questions of law are reviewed de novo, but substantial deference is given to the BIA's interpretation of the applicable statutes and regulations. *Id.*

The BIA and IJ's findings are reviewed under the substantial evidence standard. *Id.* Under this standard, the court's scope of review of factual findings is narrow. "The BIA's interpretation of the statute and regulations will be upheld unless the interpretation is 'arbitrary, capricious, or manifestly contrary to the statute.'" *Id.* (citation omitted). This court may not reverse such findings simply because it would have decided the case differently. *Id.*

Stated otherwise, the BIA's findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)).

## III.

### A.

An alien must file an application for asylum within one year of arriving in the United States in order to be eligible for relief. 8 U.S.C. § 1158(a)(2)(B). "An exception to this rule can be made if the alien demonstrates either the existence of changed circumstances which materially affect the applicant's eligibility for asylum, or extraordinary circumstances relating to the delay in filing an

5

application within the one-year period." *Shkulaku-Purballori v. Mukasey*, 514 F.3d 499, 502 (6th Cir. 2007) (citing 8 U.S.C. § 1158(a)(2)(D)).

This Court will review asylum applications denied for untimeliness only where the appeal seeks review of "constitutional claims or matters of statutory construction," not when the question is "discretionary" or "factual." *Id.* (quoting *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006)). *See also Jin Zhou Zheng v. Holder*, 339 F. App'x 592, 594 (6th Cir. 2009).

Despite reciting this standard in his brief, Lian raises no constitutional or statutory construction claims with respect to the denial of his asylum application. Instead, he asserts only that the Board erred in finding that the timing of his asylum application was not "reasonable." This is exactly the type of factual, discretionary determination that we are jurisdictionally barred from reviewing. *See Abudaya v. Holder*, 393 F. App'x 275, 279-80 (6th Cir. 2010).

We thus dismiss the petition as it pertains to Lian's asylum claim.

B.

To prevail on a petition for withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3), an alien must show that it is "more likely than not" that he would be subject to persecution on the basis of his race, religion, nationality, membership in a particular social group, or political opinion were he removed from this country. *Shkulaku-Purballori*, 514 F.3d at 503 (citation omitted). An applicant may also seek withholding of removal under CAT, under which "the applicant bears the burden of establishing 'it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Id.* (citations omitted).

Substantial evidence supports the Board's finding that Lian did not show that he had suffered past persecution, that he was likely to suffer future persecution on any of the statutory grounds, or that he would likely face torture should he return to China.

The BIA and IJ correctly determined that the fact that Lian's girlfriend had been forced to undergo an abortion did not establish an act of past persecution against him, because the two were not married. *See Mu Hua Pan v. Holder*, 381 F. App'x 572, 575 (6th Cir. 2010) (noting that protection for persecution on account of forced abortion extends to the woman undergoing the procedure and her spouse) (citation omitted).

The BIA further determined that Lian's single encounter with the village police in which he was pursued and beaten does not rise to the level of persecution, and the record does not compel a contrary result. This Court has held that persecution involves "more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998). Moreover, "a single beating does not compel a court to find that the persecution threshold has been met." *Altangerel v. Holder*, 366 F. App'x 574, 579 (6th Cir. 2010) (citation omitted). *See also Traore v. Holder*, 358 F. App'x 677, 679-80 (6th Cir. 2009) ("[W]e have consistently recognized that while even a single beating offends one's sense of civilized governmental conduct, a single beating does not *compel* a finding of persecution) (citation and internal quotation marks omitted).

Substantial evidence also supports the BIA's conclusion that Lian failed to show that it is more likely than not that he would suffer future persecution should he return to China. His single encounter with the police that occurred more than ten years ago certainly does not compel such a finding. *See Traore*, 358 F. App'x at 680 (holding that single beating at the hands of the government

7

occurring seven years before did not establish probability of future persecution). Lian produced no evidence that the Chinese government has made any further efforts to search for him or that he would likely be persecuted should he return to his country.

Finally, Lian's expressed fear that he would be subject to forced sterilization or other punishment as a result of having fathered a child in the United States without his government's permission has repeatedly been rejected by this Court as a basis for showing a likelihood of future persecution. *See Ling Juan Chen v. Holder*, 394 F. App'x 252, 257 (6th Cir. 2010); *Qui Hua Chen v. Holder*, No. 08-4188, 2010 WL 3272624, at *7 (6th Cir. Aug. 18, 2010); *Ming Juan Chen v. Holder*, 389 F. App'x 468, 472-73 (6th Cir. 2010); *Jin Zhou Zheng v. Holder*, 339 F. App'x 592, 595-96 (6th Cir. 2009).

For these same reasons, substantial evidence also supports the BIA's rejection of Lian's CAT claim.

## IV.

We therefore DISMISS the petition for review as to Lian's asylum claim and AFFIRM the decision of the BIA as to his claims for withholding of removal.